UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW COPPLE, et al.,

    Plaintiffs,

v.

ARTHUR J. GALLEGHER & CO., et al.,

    Defendants.

CASE NO. C22-0116-LK-SKV

REPORT AND RECOMMENDATION

INTRODUCTION

Plaintiffs Matthew Copple, Justin Ward, Jeremy Fischer, and Thomas Jay Moriarity, proceeding individually and on behalf of a proposed class, filed a Motion to Remand this matter to King County Superior Court. Dkt. 20. Defendants Arthur J. Gallagher & Co. and three of its affiliates (collectively "Gallagher") previously removed the case to this Court and oppose the motion to remand. Dkt. 27. Defendant City of Bellevue (Bellevue) denies it is a proper party in this matter, but does not oppose remand assuming the jurisdictional requisites for removal are

1  not met. Dkt. 29. The Court, having considered Plaintiffs' motion and all documents filed in
2  support and opposition, herein finds the motion to remand should be DENIED.

3  BACKGROUND

4  Plaintiffs filed this putative class action lawsuit in King County Superior Court on
5  January 4, 2022. Dkt. 1-1. The Complaint sought relief on behalf of some 72,385 Washington
6  residents harmed by exposure of their "Personally Identifiable Information" and "Protected
7  Health Information" in a 2020 ransomware event/data breach impacting Gallagher, its client
8  Bellevue, and other clients who utilized Gallagher as a third-party administrator to manage
9  workers' compensation claims. *See id*. The Complaint includes causes of action under the
10 Washington Data Breach Notification Act, RCW 19.255 *et seq*., and Washington Consumer
11 Protection Act (CPA), RCW 19.86 *et seq*., and for an injunction prohibiting Defendants from
12 further violations of Washington law. *Id*. at 20-22. It seeks an unspecified amount of damages,
13 including actual, consequential, statutory, and nominal damages, as well as attorney fees. *Id*. at
14 20-23.

15 On February 2, 2022, Gallagher removed the case to this Court, alleging jurisdiction
16 under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). Dkt. 1. In asserting the
17 Court's jurisdiction, Gallagher stated that the case is a class action in which the putative class
18 exceeds 100 members, at least one plaintiff is diverse from at least one defendant, and the
19 amount in controversy exceeds $5 million in total. *Id*. at 2. With respect to the amount in
20 controversy, Gallagher observed that the CPA provides for treble damages and asserted that,
21 even without consideration of attorney fees or the value of injunctive relief, a claim as low as
22 $70 for each of the more than 72,000 proposed class members satisfied CAFA's jurisdictional
23 minimum. *Id.*, ¶17. Noting that Plaintiffs seek out-of-pocket costs to prevent, detect, and
24

remedy unauthorized use of their personal information and reimbursement for lost time spent dealing with the potential misuse of their data, Gallagher asserted that the total value of the relief sought in the Complaint readily exceeds $5 million, exclusive of interest and costs. *Id*., ¶18.

In now seeking remand, Plaintiffs do not dispute that the class exceeds 100 members or includes diverse parties. Plaintiffs deny a sufficient amount in controversy to allow for the Court's jurisdiction under CAFA. They add that, following remand, they intend to file an amended complaint specifically alleging an amount in controversy under $5 million and including additional Washington employers as defendants. *See* Dkt. 20-1, Ex. A (proposed amended complaint to be filed in state court). Bellevue does not oppose the motion to remand to the extent it is premised on Plaintiffs' affirmative representation that they assert less than $70.00 per putative class member and will not seek damages in excess of $5 million.[1]

## DISCUSSION

A. <u>Applicable Standards</u>

CAFA vests federal district courts with original jurisdiction over class actions involving 100 or more class members, minimal diversity, and an amount in controversy that exceeds $5 million. 28 U.S.C. § 1332(d)(2)(A). There is no presumption against removal for cases removed under CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, a statute Congress enacted to facilitate adjudication of certain class actions in federal court.") (citations omitted).

---

[1] Bellevue also contends that Plaintiffs should voluntarily dismiss their claims against Bellevue given that the proposed amended pleading removes the allegation that Mr. Moriarty, the only named Plaintiff who claimed to be a Bellevue employee, was affected by the alleged data breach. Dkt. 29 at 2. Without a motion from Bellevue on this issue, or a response from Plaintiffs, the Court finds no basis for making a recommendation in relation to this argument.

A notice of removal filed pursuant to CAFA "'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89). However, in the face of a motion to remand, the removing party must demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is met in order to sustain the removal. *Rodriguez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 981 (9th Cir. 2013). This requires a showing that it is "'more likely than not'" the amount in controversy meets the jurisdictional minimum. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (citations omitted). Both parties may submit evidence outside the complaint, including affidavits, declarations, and other summary-judgment-type evidence, and the Court decides, through the preponderance of the evidence standard, whether CAFA's amount-in-controversy standard is satisfied. *Ibarra*, 775 F.3d at 1197 (citing *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88).

When a removing defendant "relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citing *Ibarra*, 775 F.3d. at 1199). See also *Lewis v. Hartford Cas. Ins. Co.*, No. C15-5275-RBL, 2015 WL 4430971, at *2 (W.D. Wash. July 20, 2015) (court has "'sufficient confidence, based on Plaintiff's own allegations, facts presented by [defendant], *and assumptions it believes are reasonable*, that it is more likely than not that the amount in controversy in this case exceeds $5 million.'") (quoted source omitted). The defendant cannot rely on "mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d. at 1197.

The defendant need not, however, "'research, state, and prove the plaintiff's claims for damages.'" *54-40 Brewing Co. LLC v. Truck Ins. Exch.*, No. C21-5586-BHS, 2021 WL 6124788, at *2 (W.D. Wash. Dec. 28, 2021) (also stating: "Though the burden remains with the defendant, it is not a daunting one.") (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)). The amount in controversy refers to the "amount at stake" in the litigation, which "does not mean likely or probable liability; rather, it refers to *possible* liability." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (cleaned up and quoting *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)) (emphasis added in *Jauregui*). *See also Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.")

B.  Jurisdiction Under CAFA

In seeking remand, Plaintiffs deem the damage calculations in the notice of removal speculative, unsupported by evidence, and reliant on legally unsupportable assertions, including the trebling of potential damages and the inclusion of an unspecified amount of attorney fees. Gallagher counters that, considering the alleged 72,385 class members, the $5 million jurisdictional threshold is satisfied if the average class member's claim amounts to $69.08, even without considering treble damages, attorney fees, or the potential cost of equitable relief. With trebled damages, the threshold is met with average claims of $23.03, an amount that drops to $18.43 after accounting for attorney fees of 25% of the amount recovered by the class. Gallagher points to actual damages alleged in the Complaint as demonstrating Plaintiffs seek at least $18.43 in damages per class member, and asserts that that amount, trebled and with attorney fees, readily exceeds $5 million. The Court considers these contentions, along with Plaintiffs'

REPORT AND RECOMMENDATION - 5

arguments in opposition and in support of their motion to remand and Bellevue's response to Plaintiffs' motion, below.

1. <u>Proposal to replead as to damages</u>:

Plaintiffs note their intention to file an amended pleading in state court specifying there is less than $5 million in controversy and Bellevue does not oppose remand to the extent premised on Plaintiffs' affirmative representation to that effect. Yet, the Court's determination on jurisdiction is made with consideration of the claims and allegations in the pleading existing at the time of removal. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017) ("[T]he circuits have unanimously and repeatedly held that whether remand is proper must be ascertained on the basis of the pleadings at the time of removal.") Plaintiffs' proposed amended complaint therefore does not serve to avoid jurisdiction under CAFA. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594-96 (2013) (holding that a class-action plaintiff who stipulates, prior to class certification, that the class will not seek damages exceeding $5 million in total does not evade federal jurisdiction under CAFA); *Rodriguez*, 728 F.3d at 976, 981-82 (finding waiver of claim in excess of $5 million ineffective given ruling in *Standard Fire Ins. Co.* and noting "[a] lead plaintiff of a putative class cannot reduce the amount in controversy on behalf of absent class members").

2. <u>Treble damages</u>:

Plaintiffs take issue with the inclusion of treble damages in the assessment of the amount in controversy. It is, however, "well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Such damages include treble damages authorized by statute. *See, e.g., Trepanier v. Progressive Direct Ins. Co.*, No. C12-0987-JCC, 2012 WL 12882865, at *2 (W.D. Wash. Sept. 19, 2012)

REPORT AND RECOMMENDATION - 6

1   ("[T]he amount in controversy includes not just actual damages, but also statutorily authorized
2   attorneys' fees and treble damages."). The Washington CPA provides that a district court "may,
3   in its discretion, increase the award of damages to an amount not more than three times the actual
4   damages sustained," so long as the award does not exceed $25,000. RCW 19.86.090. Plaintiffs'
5   Complaint puts treble damages at issue by alleging violations of the CPA, including Gallagher's
6   failure to safeguard Plaintiffs' data in connection with the data breach, and putative class
7   members' entitlement to treble damages pursuant to RCW 19.86.090. Dkt. 1-1, ¶120 ("Plaintiffs
8   and Class Members are entitled to an order enjoining the conduct complained of herein and
9   ordering Gallagher to take remedial measures to prevent similar data breaches; actual damages;
10  treble damages pursuant to RCW 19.86.090; costs of suit, including reasonable attorneys' fees;
11  and such further relief as the Court may deem just and proper.")

12          Plaintiffs point to an absence of evidence showing damages would be trebled. They
13  contend Gallagher cannot calculate the amount of any potential treble damages awardable
14  uniformly to class members with precision, making an aggregate award purely speculative. *See*
15  *Gibson*, 261 F.3d at 947 ("[P]unitive damages cannot be aggregated and attributed in total to
16  each member of a class action for purposes of the amount-in-controversy requirement."). They
17  also assert Gallagher's inability to state how much in damages any class member would be paid
18  as a result of the data breach, noting the particularized damages of any class members who
19  experienced identify theft and consequent financial losses.

20          Plaintiffs' reliance on the aggregation language in *Gibson*, 61 F.3d at 947, is unavailing.
21  *Gibson* came four years prior to the enactment of CAFA, which "changed the amount in
22  controversy calculation by broadly allowing the aggregation of plaintiffs' claims." *Bayol v.*
23  *Zipcar, Inc.*, No. C14-2483, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015) ("'[W]hen
24

CAFA applies, . . . the total amount of the claimed punitive damages are to be applied to the statute's $5 million jurisdictional amount requirement.'") (quoting 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3704.2 (4th ed.)).

Nor is Gallagher required to show an award of treble damages is probable or likely. "The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will *actually* owe." *Lewis*, 2015 WL 4430971, at *2-3 (cleaned up and quoted source omitted). As found by the Ninth Circuit, a defendant seeking to satisfy the amount-in-controversy requirement under CAFA need only show the proffered punitive damages amount is reasonably possible. *Greene*, 965 F.3d at 769, 772. *See also Trepanier*, 2012 WL 12882865, at *2 (finding it unreasonable to require a showing that discretionary treble damages "are more likely than not to be awarded—that would force the defendant to argue the merits against itself.") One way this burden can be met is through citation to a case involving the same or a similar statute. *See Greene*, 965 F.3d at 772 & n.3.[2]

This Court has, on several occasions, found it appropriate to consider treble damages in calculating the amount in controversy for a CPA claim. Here, as in those cases, where a plaintiff asserts a CPA claim and puts treble damages at issue, "a reasonable estimate of those damages

---

[2] In *Greene*, 965 F.3d at 770-71, a case involving alleged violations of California's Consumer Legal Remedies Act (CLRA), the removing defendant asserted an amount in controversy including punitive damages based on a "1:1 punitive/compensatory damages ratio" and cited to evidence that juries had awarded punitive damages above that ratio in other CLRA cases. The Court found a defendant could meet the burden to show it was reasonably possible it could be liable for the proffered punitive damages amount by citing a case "based on the same or a similar statute in which the jury or court awarded punitive damages based on the punitive-compensatory damages ratio relied upon by the defendant in its removal notice." *Id*. at 772. The Court clarified this was "[o]ne way" but not the "exclusive method" to make such a showing. *Id*. at 772 & n.3. The Court also rejected a requirement that the defendant show similarities to a cited case because that "effectively changed CAFA's amount-in-controversy requirement from possible liability to probable liability." *Id*. at 773 (also noting the practical difficulties raised by the district court's approach in "invit[ing] a defendant to analogize cases that have been tried to verdict to a case at the pleading stage in which discovery has not even begun.")

must be included in the amount in controversy calculus." *Lewis*, 2015 WL 4430971, at *2-3 (finding three times the amount of compensatory damages pled the amount of damages "put 'in play'" by the complaint); *accord Dawsey v. Travelers Indem. Co.*, No. C15-5188-RBL, 2015 WL 4394545, at *2-3 (W.D. Wash. July 16, 2015) (finding same), and *G.G. v. Valve Corp.*, No. C16-1941-JCC, 2017 WL 11605207, at *2 (W.D. Wash. Feb. 13, 2017) (finding jurisdictional minimum met by trebling average individual alleged losses for a CPA claim). *Cf. Trepanier*, 2012 WL 12882865, at *2 (finding plaintiffs' demand for treble damages and their authorization under the Insurance Fair Conduct Act "sufficient to show that they are part of the amount in controversy.")

       3.      <u>Attorney fees</u>:

Plaintiffs also seek an award of attorney fees, Dkt. 1-1 at 23, as is provided for under the CPA, *see* RCW 19.86.090. Gallagher asserts that, for purposes of determining the amount in controversy under CAFA, class action counsel attorney fees could equal 25% of the amount recovered by the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("'This circuit has established 25% of the common fund as a benchmark award for attorney fees.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)); *Berry v. Transdev Servs., Inc.*, No. C15-1299-RAJ, 2016 WL 11261499, at *4-5 (W.D. Wash. Jan. 11, 2016) (finding amount in controversy exceeded $5 million with consideration of attorney fees equal to 25% of the compensatory damages); *Dawsey*, 2015 WL 4394545, at *3 (same).

Plaintiffs do not dispute that attorney fees are properly considered for purposes of determining the amount in controversy. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.")

REPORT AND RECOMMENDATION - 9

(citation omitted); *accord Trepanier*, 2012 WL 12882865, at *2. Plaintiffs instead argue Gallagher's assertions are too speculative and insufficient to include an amount for attorney fees.

As with treble damages, a removing party need only show estimated attorney fees are reasonable. *See Greene*, 965 F.3d at 774 n.4 (finding that, where removing defendant provided evidence plaintiffs' counsel sought a 35% fee award in a similar case, it was reasonable to assume counsel would seek fees equal to 25% of the controversy if plaintiffs prevailed). As stated by one court: "There is no per se rule that a 25% award for attorneys' fees is reasonable *vel non*; the context of each individual case must be assessed." *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1138 (N.D. Cal. 2020) (citing *Arias*, 936 F.3d at 928). A removing party may meet its burden by, for example, identifying a similar case in which a court found a potential 25% fee award reasonable. *See id.* at 1138-39 (citing *Greene*, 965 F.3d at 772). With this understanding, the Court considers Gallagher's assertions as to attorney fees below.

    4.  <u>Evidence of class member damages and satisfaction of jurisdictional minimum</u>:

Gallagher argues it is clear from the Complaint that Plaintiffs seek at least $18.43 in damages per class member. That is, Plaintiffs allege "actual damages" suffered by the class include expenses and/or time spent on credit monitoring, identifying theft insurance, and initiating fraud alerts, for time spent "scrutinizing bank statements, credit card statements, and credit reports," and for lost work time. Dkt. 1-1, ¶¶83, 119. Plaintiffs allege they "face years of constant surveillance of their financial and personal records, monitoring, and loss of rights" and deem inadequate the "only two years of identity and credit monitoring services" Gallagher offered to the proposed class. *Id.*, ¶85. They identify statistics as reflecting that identity theft victims report "'spending an average of about 7 hours clearing up the issues' relating to identity theft or fraud." *Id.*, ¶80 (quoted source omitted). Plaintiffs allege they "spent time dealing with

REPORT AND RECOMMENDATION - 10

the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring their accounts[,]" and that their claims are typical of the class. *Id.*, ¶¶92, 101(c). They point to a report stating identity theft can result in "thousands of dollars" in out-of-pocket expenses and cite to a study that found identity theft victims suffered an average financial loss of $1,343.00. *Id.*, ¶¶77, 80, n.9 (citing E. Harrell, *U.S. Dep't of Justice, Victims of Identity Theft, 2014* (rev. Nov. 13, 2017), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf).

Gallagher asserts that, based on advertised monthly rates for credit monitoring services from the three national credit reporting agencies, the credit monitoring Plaintiffs seek would cost, at a minimum, $119 per class member per year. Dkt. 28, ¶¶2-6 (identifying advertised monthly rates ranging from $9.99 to $24.95 per month through Experian, Equifax, and TransUnion). Gallagher argues that, assuming each of the 72,385 class members seek a total of three years of credit monitoring (or one year beyond the offer Plaintiffs deem inadequate), the amount of damages for credit monitoring alone satisfies the jurisdictional threshold. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. C16-1005, 2016 WL 4051265, at *3 (C.D. Cal. July 25, 2016) ($5 million exceeded, even without consideration of attorney fees, with three years of credit monitoring protection at $15.95 per month for a class of 8,719); *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (finding it "hard to see" how $5 million was not exceeded for a class "in the thousands" and a claim for actual damages including loss, out-of-pocket expenses, and an administered fund covering more than a year of comprehensive credit monitoring, even without consideration of punitive damages); *Fielder v. Penn Station, Inc.*, No. C12-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) ($5 million exceeded with a demand for two years of credit monitoring alone,

REPORT AND RECOMMENDATION - 11

with a cost ranging from $168 to $576 per class member and a class of over one million persons).

With respect to compensation for lost time, Gallagher suggests the use of Washington's $13.69 per hour minimum wage in 2021. *Id*., ¶7. It argues that, applying this amount to the putative class, the amount in controversy would be satisfied even if the average class member incurred only eighty-one minutes of lost time. Gallagher further argues that, applying the above-described average financial loss of $1,343.00 suffered by identify theft victims to the putative class, the total financial loss would exceed the $5 million jurisdictional threshold by a significant amount. *Cf. Crawford v. thyssenkrupp Materials NA, Inc.*, No. C21-390, 2021 WL 4843957, at *2 (E.D. Mo. Oct. 18, 2021) (identifying as the only cognizable number of damages in the complaint the citation to the $1,343.00 average amount of financial loss, but finding it insufficient to establish federal jurisdiction for a class numbering 465 in total).

Plaintiffs deem Gallagher's calculations of damages unreasonable in both assumptions and conclusions. Specifically, they contend Gallagher unreasonably assumes every class member in this case would timely claim credit monitoring services, that Gallagher would be forced to pay retail price for those services, and that the Court would treble the retail value of those services.

Plaintiffs also note that, in conducting an exhaustive search of privacy and data breach claims in Washington, they were unable to locate any matters resolved for more than $5 million. They point to several settlements of data breach and privacy cases as typical resolutions of Washington State classes, including $185,000 on behalf of 16,466 class members in *Bailey v. Grays Harbor Cnty. Pub. Dist. No. 2*, No. 20-2-00217-14 (Grays County Super. Ct. 2020); $4,700,000 on behalf of 992,327 class members in *Armon v. Washington State Univ.*, No. 17-2-

23244-1 (King County Super. Ct. 2019); and $495,750, an amount including attorney fees and costs, in *Richardson v. Overlake Hosp. Med. Ctr.*, No. 20-2-07460-8 (King County Super. Ct. 2021). *See* Dkt. 20 at 3-4. In *Bailey* and *Richardson*, the attorney fee awards amounted to $175,000 and $195,000. *See id*. at 5. Plaintiffs note Gallagher's failure to identify any case resolutions in Washington exceeding $5 million. They contend the damage figures proposed by Gallagher are patently unreasonable given that it would represent the single largest and most harmful data breach in Washington history despite impacting only 72,385 Washingtonians.[3]

Plaintiffs' arguments are not persuasive. Again, the Court properly considers the the amount Plaintiffs put in controversy through the allegations in their Complaint, not what Defendants might ultimately pay in resolving the lawsuit. Similarly, while relevant, the evidence of settlement amounts in Washington cases does not resolve the question of the total amount of damages in controversy. As Gallagher observes, the settlement amounts reflect only negotiated resolutions made prior to trial; they do not show the potential total amount of damages. *See generally Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) ("[T]he amount in controversy [is] the amount at stake in the underlying litigation" which "includes any result of the litigation, excluding interests and costs, that entail[s] a payment by the defendant.") (cleaned up and citations omitted).

Nor does the Court find the proffered figures and calculations unreasonable. Gallagher, for example, reasonably relies upon advertised rates offered by Equifax, TransUnion, and Experian, the three national credit reporting agencies, to identify the minimum cost for one year

---

[3] Plaintiffs also deem Gallagher's arguments contradictory to its contention of de minimis damages in a motion to dismiss in *In re Arthur J. Gallagher Data Breach Litigation*, No. C22-0137 (N.D. Ill.), a consolidated action in the Northern District of Illinois and at issue in Gallagher's pending Motion to Transfer, Dkt. 21. Because the Court does not find this alleged contradiction relevant to its determination on the motion to remand, it does not address it herein.

REPORT AND RECOMMENDATION - 13

of credit and identity theft monitoring services, and reasonably adds one additional year of monitoring beyond the amount Plaintiffs deem insufficient. *See, e.g.*, *Porras, LLC*, 2016 WL 4051265, at *3 (finding the amount reasonably placed in controversy exceeded $5 million where it included a conversative estimate of three years of monthly credit monitoring at $15.95 a month, based on consideration of advertised monthly rates from Equifax, TransUnion, and Experian). In can be said that, with consideration of credit monitoring alone, Plaintiffs have placed more than $25 million in controversy ($9.99 x 12 months (or $119 a year) x 3 years x 72,385 class members).

Gallagher does not, in any event, rest its assessment of the amount in controversy on that considerable figure. Gallagher reasonably and persuasively accounts for the provision of a substantially lower amount of average damages sufficient to meet the jurisdictional threshold. That is, an average claim of only $18.43, trebled as allowed for under the CPA, and multiplied by 72,385 class members, results in a potential recovery of $4,002,166.65, and the addition of 25% of that amount for attorney fees results in an amount in controversy exceeding $5 million. Gallagher identifies cases from this Court finding it appropriate, in the assessment of jurisdiction under CAFA, to consider trebled damages under the CPA, *see G.G.*, 2017 WL 11605207, at *2; *Lewis*, 2015 WL 4430971, at *2-3; *Dawsey*, 2015 WL 4394545, at *2-3, and to provide for attorney fees equal to 25% of the compensatory damages, *Berry*, 2016 WL 11261499, at *4-5; *Dawsey*, 2015 WL 4394545, at *3. The Court, considering this showing, finds the estimated actual damages, treble damages, and attorney fees reasonable, and concludes it is more likely than not the amount in controversy exceeds $5 million. Gallagher thus satisfies its burden to establish this Court's jurisdiction under CAFA by a preponderance of the evidence.

/ / /

## CONCLUSION

The Court, in sum, finds jurisdiction in this case under CAFA. For this reason, Plaintiffs' Motion to Remand this matter to King County Superior Court, Dkt. 20, should be DENIED.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 19, 2022**.

Dated this 2nd day of August, 2022.

S. KATE VAUGHAN
United States Magistrate Judge